**SCOTT PAPER COMPANY, Plaintiff,**

v.

**NICE–PAK PRODUCTS, INC.,
Defendant.**

**Civ. A. No. 87–517–JLL.**

United States District Court,
D. Delaware.

Jan. 22, 1988.

Rudolf E. Hutz, Paul E. Crawford, Stanley C. Macel III, and Collins J. Seitz, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, Del., and Norman M. Heisman, John W. Kane, Jr., and John A. Weygandt of Scott Paper Co., Philadelphia, Pa., of counsel, for plaintiff.

R.H. Richards III of Richards, Layton & Finger, Wilmington, Del., Michael J. Sweedler and Andrew Baum of Darby & Darby, P.C., New York City, and David M. Perlmutter of Golenbock, Eiseman, Assor, Bell & Perlmutter, New York City, of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This cause of action is for trademark infringement, trademark dilution and deceptive trade practices. The issue now before the Court is defendant's pre-answer motion to dismiss or, in the alternative, transfer the cause of action to the United States District Court for the Southern District of New York under 28 U.S.C. § 1406(a). (Docket Item ["D.I."] 9.) For reasons set forth below, the Court will deny defendant's motion to dismiss but grant defendant's motion to transfer under § 1406(a).

## I. FACTS

The plaintiff, Scott Paper Company, manufactures moist towelettes which are used as baby wipes. In late 1983, plaintiff introduced a new line of baby wipes under the trademark "WASH A–BYE BABY." (D.I. 16 at 1.) The baby wipes were packaged in a round tapered canister with distinctive labels. (Id.) Nice–Pak Products, Inc., the defendant, is a New York corporation which also sells baby wipes. (D.I. 13 at Ex. A.) The defendant allegedly copied improvements that Scott made in the trade dress of its baby wipes canister. (Id.) Scott filed this suit to prevent the alleged infringement of its trademark. (D.I. 1 at 12–15.) Plaintiff charged that defendant violated the Lanham Trademark Act of 1946 (15 U.S.C. § 1125(a)), the Delaware Deceptive Trade Practices Act (6 *Del.C.* § 2531 *et seq.*), and the Delaware Trademark Act (6 *Del.C.* § 3301 et seq.). (D.I. 1 at 1.)

Defendant is not licensed to do business in Delaware. (D.I. 13 at Ex. A.) Defendant asserts that it has no offices or repre-

sentatives located in Delaware. (*Id.*) Nice–Pak also does not own, rent or lease any property in Delaware. (*Id.*) It has no bank account, telephone listing, or post office box within the state. (*Id.*) Nice–Pak has three sales accounts located in Delaware, all of which are serviced by an independent sales representative located outside of Delaware. (*Id.*) Defendant also sells baby wipes in bulk to retailers located outside of Delaware. (D.I. 13 at Ex. 1.) The retailers subsequently ship the product to their individual stores, some of which are located in Delaware. (*Id.*)

## II. ANALYSIS

■ Defendant has moved to dismiss this action on the ground that venue is improper, or, in the alternative, that this Court transfer the cause of action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406. (D.I. 9.) Plaintiff argues that venue is proper under the general federal venue statute, 28 U.S.C. § 1391(b).[1] Defendant bears the burden of proving improper venue. *Myers v. American Dental Assn.*, 695 F.2d 716, 724–25 (3d Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). Nice–Pak argues that venue in Delaware is improper because it does not reside in Delaware and the claim did not arise here. (D.I. 9.) On a motion to dismiss, the facts must be construed in favor of the non-moving party. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

■ Under 28 U.S.C. § 1391(c), a judicial district is considered to be the residence of a corporation for the purpose of venue if the corporation "is incorporated or licensed to do business or is doing business" in that district. Nice–Pak is neither incorporated nor licensed to do business in Delaware. (D.I. 16 at 8.) Defendant asserts that its only contact with Delaware is its sales through independent salesmen located outside the state. (D.I. 13 at 2.) Defendant argues that these sales, which amounted to $3,655 in the first ten months of 1987, are insufficient to constitute "doing business" in Delaware for venue purposes. (D.I. 13 at 4–5; D.I. 18 at Ex. A.)

There is a split of authority on the question of how to construe the "doing business" language in 28 U.S.C. § 1391(c). Several courts have held that if a defendant has sufficient contacts with a forum to make the defendant amenable to service of process, then such contacts are also sufficient to meet the doing business requirement for venue. *Houston Fearless Corp. v. Teter*, 318 F.2d 822, 825 (10th Cir.1963); *Transload & Transport v. Tennessee Valley Towing, Inc.*, 609 F.Supp. 185, 186 (M.D.La.1985); *Cable News Network, Inc. v. American Broadcasting Companies*, 528 F.Supp. 365, 367 (N.D.Ga.1981). Some commentators have also supported this view, in part because having one standard for both personal jurisdiction and venue simplifies a court's inquiry. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3811 (2d ed. 1986); J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice*, ¶ 0.142 (2d ed. 1986).[2]

However, several courts have concluded that more contacts between the defendant and the forum are required for venue than

---

**1.** 28 U.S.C. § 1391(b) reads: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." As this Court's jurisdiction is not founded solely on diversity but is also based on the fact that the claim arises in part under the Lanham Trademark Act of 1946, § 1391(b) is the appropriate provision of the general federal venue statute.

**2.** Indeed, the Committee on Court Administration of the Judicial Conference of the United States has recommended to Congress that 28 U.S.C. § 1391(c) be amended to read (in part): "For purposes of venue under this chapter, a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." (Statement of Judge Elmo B. Hunter, Chairman of the Committee on Court Administration of the Judicial Conference, before the Subcommittee on Courts, Civil Liberties and the Administration of Justice, U.S. House of Representatives (Sept. 23, 1987).)

for personal jurisdiction. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947 (1st Cir.1984); *Vivadent (USA) Inc. v. Darby Dental Supply Co.,* 655 F.Supp. 1359, 1361 (D.N.J.1987); *Flowers Industries v. Bakery and Confectionery Union and Industry International Pension Fund,* 565 F.Supp. 286, 291 (N.D.Ga. 1983); *P.C. Products Corp. v. Williams,* 418 F.Supp. 331, 332 (M.D.Pa.1976), *appeal dismissed,* 556 F.2d 568 (3d Cir.1977). Several commentators have also supported this view, noting that some of the principles underlying venue differ from those underlying personal jurisdiction. *See* Lansing & Castle, *Venue In The Federal Courts Under The "Doing Business" Provision Of 28 U.S.C. § 1391(c): A Provision Subject To Reinterpretation,* 16 University of Rich. L.R. 7, 32–33 (1981); Note, *Federal Venue Over Corporations Under Section 1391(c): Plaintiff Corporations, the Judicial District Limitation, and "Doing Business",* 12 Ga.L.Rev. 296, 308–322 (1978). While there have been no holdings directly on this issue, prior cases in this District appear to indicate acceptance of a higher standard for venue. *See Athletes Foot of Delaware v. Ralph Libonati Co.,* 445 F.Supp. 35, 45 (D.Del.1977); *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 374 F.Supp. 184 (D.Del. 1974) (stating in *dicta* that an entity which has contacts with the forum sufficient for service of process will not necessarily meet the doing business test for venue).

Defendant's contacts with this forum are not substantial. Its sales in Delaware are handled by an independent broker, R.P.M. Sales, which is based in Pittsburgh, Pennsylvania. (D.I. 13 at Ex. A.) Sales by R.P.M. in Delaware of defendant's products totaled $3,655 for the period of January to October, 1987. (D.I. 18 at Ex. A.) None of the sales in Delaware included the alleged infringing product. (*Id.*) The R.P.M. sales representatives handling the three Delaware accounts are located in New Jersey and Washington, D.C. (D.I. 13 at Ex. A.) Neither R.P.M. nor the defendant have any offices in Delaware. (*Id.*) Nice–Pak's other contacts with the forum include one business trip five years ago by its president and two visits several years ago by a company salesperson. (D.I. 16, Ex. 5 at 53–54, 1–2.)

Nice–Pak's contacts with Delaware in this case are similar in amount to those of the defendant in *Athletes Foot of Delaware,* 445 F.Supp. 35. In *Athletes Foot,* defendant received a $5,000 franchise fee and approximately $2,500 in royalties from a franchisee with a store in Delaware. The court in *Athletes Foot* found that such contacts were insufficient to meet the "doing business" test required for venue under 28 U.S.C. § 1391(c). 445 F.Supp. at 45. The court determined that defendant's contacts did not even meet the "transacting business" standard for venue under the Clayton Act, a standard which the court held required less activity than the "doing business" standard of 28 U.S.C. § 1391(c). *Id.* at 44–45.

Plaintiff argues that defendant's contacts with this forum should include Nice–Pak's sales to national retailers who subsequently ship Nice–Pak's product to their Delaware stores. (D.I. 16 at 8.) However, plaintiff has not given any indication that defendant controls or supervises any of the activities of the relevant national retailers in Delaware. Even the sales of a subsidiary which distributes a parent's products in a forum will not subject the parent to venue in a forum as long as the subsidiary is in fact a separate corporate entity. *Papercraft Corp. v. Proctor & Gamble Co.,* 439 F.Supp. 1060, 1062 (W.D.Pa.1977). In addition, plaintiff admits that most of defendant's products in Delaware are sold under the private label of the retailer. (D.I. 16 at 4.) While it is true that defendant's trademark does appear in some Delaware stores, the appearance of the trademark alone in a forum, without other substantial business activity, does not constitute doing business in Delaware. *Athletes Foot,* 445 F.Supp. at 44. Therefore, the Court concludes that Nice–Pak is not doing business in this district within the meaning of 28 U.S.C. § 1391(c).

Defendant also argues that venue cannot be established under the "claim arose" language of § 1391(b). (D.I. 13 at 9.) Prior to the Supreme Court's decision

in *Leroy v. Great Western United,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the "claim arose" language in § 1391(b) was subject to differing interpretations by the courts. *Compare Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 892 (S.D.N.Y.1974) (holding that a court must find that more than a miniscule number of the events giving rise to a claim occurred in the given district in order to find venue) *with Scott Paper Co.,* 374 F.Supp. at 189–90 (holding venue proper in any district in which the claim could be said to have arisen).

The Supreme Court's opinion in *Leroy* helped to clarify the "claim arose" standard. The Court determined that Congress "restricted venue either to the residence of the defendants or to 'a place which may be more convenient to the litigants'—i.e., both of them—'or to the witnesses who are to testify in the case.'" 443 U.S. at 185, 99 S.Ct. at 2717 (quoting S.Rep. No. 1752, 89th Cong., 2d Sess., 3 (1966)). Furthermore, the Supreme Court stated that the broadest possible interpretation of the "claim arose" standard was:

> that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id. See also Myers,* 695 F.2d at 723; *Look Magazine v. Look, Inc.,* 596 F.Supp. 774, 775 (D.Del.1984).

Using the guidelines set forth in *Leroy,* this Court finds that the locus of the claim is the Southern District of New York. Nice–Pak is a New York corporation with its headquarters in Orangeburg, Rockland County, New York. (D.I. 13 at Ex. A.)

The management decisions regarding trade dress of all Nice–Pak products are made at the headquarters in Orangeburg. (*Id.*) Scott Paper concedes that the witnesses for Nice–Pak are located in Orangeburg. (D.I. 16 at 20.) Consequently, it appears that Orangeburg is a center for the alleged infringing activities at issue here.

While it may be possible that there is another district which would be equally plausible as the locus of the claim, Delaware is not it. Though some of plaintiff's witnesses and evidence are located in Delaware, Nice–Pak's witnesses are located in Orangeburg, New York. (D.I. 16 at 18, 20.) The few documents required so far in this litigation originated in New York, though some have been transferred to Delaware. (*Id.* at 19.) The third factor set forth in *Leroy,* the convenience of the defendants, unquestionably weighs in favor of New York. In sum, this Court cannot say that it is equally plausible that this claim arose in Delaware. Accordingly, plaintiff cannot choose Delaware as a district in which the claim arose under 28 U.S.C. § 1391(b). As the Court has concluded above that the defendant does not reside in Delaware, the Court holds that venue in this District is improper under 28 U.S.C. § 1391(b).

■ Because venue in this district is improper as to Nice–Pak, under 28 U.S.C. § 1406(a) this Court must either dismiss or transfer this case.[3] The Court need not make a determination that it has personal jurisdiction over the defendant in order to transfer the case under § 1406(a). *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962). Rather than harshly penalizing the plaintiff by dismissing the case,[4] the Court finds it in the interest of justice to transfer the case under § 1406(a) to a district where venue may be properly asserted. *British–American Ins. Co. v. Lee,* 403 F.Supp. 31,

---

3. 28 U.S.C. § 1406(a) reads: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

4. Defendant in fact asserts that transfer of this case will aid in resolving the dispute as conveniently and expeditiously as possible. (D.I. 13 at 13.)

37 (D.Del.1975). As defendant Nice–Pak is a New York corporation with its headquarters in Orangeburg, New York, the Court finds that this claim could have been brought in the Southern District of New York.

Therefore, in accordance with the Court's Memorandum Opinion, an order will be entered transferring this case to the United States District Court for the Southern District of New York.